17-952-cr
*United States v. Pereira-Gomez*

**In the**

# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2017

No. 17-952-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

MANUEL PEREIRA-GOMEZ, AKA Manuel Jesus
Pereira, AKA Manuel Pereiro, AKA Manny Pereira,
*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Eastern District of New York

---

SUBMITTED: MARCH 9, 2018
DECIDED: SEPTEMBER 7, 2018

---

Before: CABRANES and CARNEY, *Circuit Judges*, and CAPRONI, *District Judge.*[*]

_____

Defendant-Appellant Manuel Pereira-Gomez ("Pereira") appeals from a March 29, 2017 judgment of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*). The District Court convicted Pereira, following his plea of guilty, of illegal reentry into the United States after previously having been deported after the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), and sentenced him principally to 46 months' incarceration to be followed by three years of supervised release. On appeal, Pereira argues that the District Court erred when it concluded that his prior New York conviction for attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110.00 and 160.10, qualified as a "crime of violence" for enhancement purposes under Section 2L1.2 of the November 1, 2014 United States Sentencing Guidelines.

This case presents two questions:

(1) Whether attempted robbery in the second degree under New York law is a "crime of violence" under the "enumerated offenses" of application note 1(B)(iii) to Section 2L1.2 of the

_____

[*] Judge Valerie Caproni, of the United States District Court for the Southern District of New York, sitting by designation.

November 1, 2014 edition of the Sentencing Guidelines; and, if not,

(2) Whether attempted robbery in the second degree under New York law is a "crime of violence" under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the November 1, 2014 edition of the Sentencing Guidelines.

We conclude that attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110.00 and 160.10, is not a "crime of violence" under the "enumerated offenses," but is a "crime of violence" under the "force clause."

Accordingly, we **AFFIRM** the District Court's judgment.

---

> Raymond A. Tierney, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, *on the brief*), *for* Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *Appellee*.
>
> Barry D. Leiwant, Federal Defenders of New York, Inc., New York, NY, *for Appellant-Defendant*.

---

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Manuel Pereira-Gomez ("Pereira") appeals from a March 29, 2017 judgment of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*). The District Court convicted Pereira, following his plea of guilty, of illegal reentry into the United States after previously having been deported after the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), and sentenced him principally to 46 months' incarceration to be followed by three years of supervised release. On appeal, Pereira argues that the District Court erred when it concluded that his prior New York conviction for attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110.00[1] and 160.10,[2]

---

[1] N.Y. Penal Law § 110.00 provides: "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

[2] N.Y. Penal Law § 160.10 provides:

A person is guilty of robbery in the second degree when he forcibly steals property and when:

1.  He is aided by another person actually present; or
2.  In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
    (a) Causes physical injury to any person who is not a participant in the crime; or
    (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
3.  The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

qualified as a "crime of violence" for enhancement purposes under Section 2L1.2 of the November 1, 2014 United States Sentencing Guidelines ("2014 Guidelines").[3]

This case presents two questions:

(1) Whether attempted robbery in the second degree under New York law is a "crime of violence" under the "enumerated offenses" of application note 1(B)(iii) to Section 2L1.2 of the November 1, 2014 edition of the Sentencing Guidelines; and, if not,

(2) Whether attempted robbery in the second degree under New York law is a "crime of violence" under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the November 1, 2014 edition of the Sentencing Guidelines.

We conclude that attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110.00 and 160.10, is not a "crime of

---

Robbery in the second degree is a class C felony.

[3] Both Pereira and the government assume that the November 1, 2015 version of the United States Sentencing Guidelines ("2015 Guidelines") was in place when Pereira committed the offenses at issue in this appeal. But the October 21, 2015 Indictment—itself filed before November 1, 2015—charged that the offenses were committed "[o]n or about September 5, 2015," when the 2014 Guidelines were in place. App'x at 8. We therefore refer to the 2014 Guidelines, not the 2015 Guidelines, when discussing the version of the Guidelines in place when Pereira violated 8 U.S.C. §§ 1326(a) and 1326(b)(2). As the Guidelines provisions at issue in this case are identical in the 2014 and 2015 Guidelines, this correction does not affect our analysis.

violence" under the "enumerated offenses," but is a "crime of violence" under the "force clause."[4]

Accordingly, we **AFFIRM** the District Court's judgment.

## I.  BACKGROUND

In 1997, Pereira pleaded guilty in New York state court to attempted robbery in the second degree. He was subsequently deported from the United States on three occasions. After reentering the United States a fourth time, he was arrested for, *inter alia*, felony offenses of driving while intoxicated and aggravated unlicensed operation of a motor vehicle. On October 21, 2015, Pereira was indicted for having been found in the United States, on or about September 5,

---

[4] Application note 1(B)(iii) of Section 2L1.2 of the November 2014 Guidelines provided:

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, *or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*.

The "force clause" is emphasized above.

2015, after having been previously deported from the United States following a conviction for an aggravated felony.[5]

On March 23, 2016, Pereira pleaded guilty to the charges against him. He and the government, however, were unable to reach a plea agreement because they disputed the applicable advisory Guidelines range.

At the time of sentence, Pereira argued that the District Court should apply the 2014 Guidelines, which were in place when he violated 8 U.S.C. §§ 1326(a) and 1326(b)(2), because the 2014 Guidelines set forth a lower advisory range than the November 1, 2016 Guidelines Manual ("2016 Guidelines") in effect at the time of Pereira's sentencing.[6] He further contended that under the 2014 Guidelines, his 1997 conviction for attempted robbery in the second degree was not a "crime of violence" that triggered a 16-level prior offense enhancement under Guidelines Section 2L1.2(b)(1)(A).[7] Finally,

---

[5] *See* note 3 and accompanying text, *ante*.

[6] A sentencing court typically applies the Guidelines Manual in place at the time of sentencing, which here would be the 2016 Guidelines. However, "there is an *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh v. United States*, 569 U.S. 530, 533 (2013). Accordingly, the sentencing court would be required to apply the 2014 Guidelines if that version provided a lower sentencing range than the 2016 Guidelines. *See also* note 4, *ante*.

[7] In the 2014 Guidelines, Section 2L1.2(b)(1)(A) provided:

7

Pereira argued that, absent the 16-level enhancement, his total adjusted offense level was 10, yielding an advisory Guidelines range of 15 to 21 months' imprisonment.

The government calculated Pereira's advisory Guidelines range under both the 2014 and the 2016 Guidelines. Under the 2014 Guidelines, the government argued, Pereira's 1997 conviction qualified as "crime of violence"—thus resulting in a 16-level enhancement and a total adjusted offense level of 21. Based on Pereira's criminal history category of IV, the government arrived at a 2014 Guidelines advisory range of 57 to 71 months' imprisonment. Under the 2016 Guidelines, by contrast, the government argued that Pereira's total offense level fell to 19 with a corresponding advisory range of 46 to 57 months' imprisonment.[8]

---

If the defendant previously was deported, or unlawfully remained in the United States, after—

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by **16** levels if the conviction receives criminal history points under Chapter Four or by **12** levels if the conviction does not receive criminal history points.

[8] The government computed a lower sentence range under the 2016 Guidelines because Section 2L1.2(b)(1) of the 2016 Guidelines eliminated the use of the term "crime of violence," and instead based the enhancement primarily on the length of the sentence imposed for the prior offense.

The District Court sentenced Pereira on March 29, 2017. It determined that Pereira's prior conviction was a "crime of violence" under the 2014 Guidelines. The District Court then applied the 2016 Guidelines, which produced a lower range, and sentenced Pereira principally to 46 months' imprisonment to be followed by three years of supervised release.[9]

This appeal followed.

## II.   DISCUSSION

On appeal, Pereira argues that the District Court erred in finding that his prior New York state conviction for attempted robbery in the second degree is a "crime of violence" under Section 2L1.2 of the 2014 Guidelines. Specifically, he contends that his prior conviction does not qualify as a "crime of violence" under either the "enumerated offenses" or the "force clause" of application note 1(B)(iii) of Section 2L1.2.

We agree with Pereira that his prior conviction is not a "crime of violence" under the "enumerated offenses" in application note 1(B)(iii). We conclude, however, that his prior conviction *is* a crime of

---

[9] As the Supreme Court reminds us, the Guidelines merely "guide district courts in exercising their [sentencing] discretion . . . , but they do not constrain that discretion." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (internal quotation marks and alterations omitted). Because Pereira's sentence falls within the statutory range, the District Court had the discretion to impose that sentence regardless of whether Pereira's prior conviction was, in fact, a "crime of violence" under the 2014 Guidelines.

violence under the application note's "force clause." Accordingly, we affirm the judgment of the District Court.

## A. Standard of Review

When reviewing Guidelines calculations, we ordinarily "apply a *de novo* standard to legal conclusions and we accept the sentencing court's factual findings unless they are clearly erroneous."[10] But where a defendant raises arguments for the first time on appeal, "we review his claims for plain error."[11] We apply the plain error standard "less stringently in the sentencing context, where the cost of correcting an unpreserved error is not as great as in the trial context."[12]

## B. The "Enumerated Offenses" Analysis

We first consider whether Pereira's prior conviction is a "crime of violence" under the "enumerated offenses" in application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. We conclude that it is not.

\* \* \*

Where the Guidelines enumerate an offense as a "crime of violence," we undertake what is known as the "categorical

---

[10] *United States v. Walker*, 595 F.3d 441, 443 (2d Cir. 2010).

[11] *United States v. Zillgitt*, 286 F.3d 128, 131 (2d Cir. 2002).

[12] *United States v. Jones*, 878 F.3d 10, 14–15 (2d Cir. 2017) ("*Jones II*") (internal quotation marks omitted).

approach."[13] We "look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions."[14] We then compare the elements of the statutory offense to "the generic, contemporary" definition of the offense.[15] A prior conviction will constitute a "crime of violence" for a sentencing enhancement "only if the statute's elements are the same as, or narrower than, those of the generic offense."[16]

In some cases, however, the defendant is convicted under a more complicated statute that criminalizes multiple acts in the alternative—thereby requiring a sentencing court to deduce which of these elements "was integral to the defendant's conviction."[17] In these circumstances, we apply what is known as the "modified categorical approach." This requires us to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and

---

[13] *Id.* at 18.

[14] *Descamps v. United States*, 570 U.S. 254, 261 (2013) (emphasis in original) (internal quotation marks omitted); *see also United States v. Genao*, 869 F.3d 136, 144 (2d Cir. 2017) (same). *Descamps* involved the Armed Career Criminal Act ("ACCA"), not the Guidelines, but "we apply the same categorical approach irrespective of whether the enhancement is pursuant to the ACCA or the Guidelines." *Walker*, 595 F.3d at 444 n.1.

[15] *Taylor v. United States*, 495 U.S. 575, 598 (1990).

[16] *Descamps*, 570 U.S. at 257.

[17] *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

colloquy) to determine what crime, with what elements, a defendant was convicted of."[18]

Here, because Pereira was convicted under a statute that criminalizes multiple acts in the alternative, we adopt the modified categorical approach. The government concedes that Pereira's certificate of disposition "does not specify which subsection of N.Y. Penal Law § 160.10 was charged."[19] Ordinarily, we would therefore be required to determine "the least of the acts proscribed by the statute."[20] We need not do so here, however, because the outcome of that analysis does not affect our conclusion.

\* \* \*

Regardless of which particular aggravating factor set forth in N.Y. Penal Law § 160.10 applies, we must consider whether the statute under which Pereira was convicted is the same as, or narrower than, the generic offense of robbery.[21] His crime of conviction will not

---

[18] *Id.*; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005).

[19] Appellee Br. at 4 n.2.

[20] *Jones II*, 878 F.3d at 17 (internal quotation marks and alteration omitted).

[21] This Court, discussing the so-called residual clause of former Guidelines Section 4B1.2(a)(2), recently observed that "it would seem that . . . robbery of *any degree* in New York qualifies as a crime of violence." *Jones II*, 878 F.3d at 17 (emphasis in original); *see also United States v. Dove*, 884 F.3d 138, 152 (2d Cir. 2018) (describing *Jones II* as holding "that New York robbery, regardless of degree, is categorically a crime of violence pursuant to the residual clause"). The "residual clause" in effect allowed the rule to apply to situations not explicitly enumerated

12

qualify as a "crime of violence" under the "enumerated offenses" if the statute he was convicted of violating "sweeps more broadly than the generic crime."[22]

---

within it. The holding in *Jones II* does not control in this case because Section 2L1.2 of the 2014 Guidelines does not include a "residual clause."

A court must be careful to distinguish between the categorical approach as applied to the two clauses. Under the "residual clause" analysis, a court asks whether the offense of conviction "involves conduct that presents a serious potential risk of physical injury to another." *Jones II*, 878 F.3d at 15 (quoting U.S.S.G. § 4B1.2(a)(2) (2015)); *see also Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) ("Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury."(internal citation omitted)).

In contrast, under the "enumerated offenses" analysis, a court asks whether the offense of conviction is substantially similar to, or narrower than, the generic definition of the offense. *See Mathis*, 136 S. Ct. at 2248 ("To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case.").

A court also applies the categorical approach to the "force clause." As will be discussed further below, the "force clause" analysis asks whether the predicate offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. 1(B)(iii) (2014); *see also Stuckey v. United States*, 878 F.3d 62, 70 (2d Cir. 2017).

[22] *Descamps*, 570 U.S. at 261.

The generic definition of an offense "is the 'contemporary understanding' of the term."[23] This understanding will often be the "sense in which the term is now used in the criminal codes of most States."[24] In some cases, however, "courts also consult other sources, including federal criminal statutes, the Model Penal Code, scholarly treatises, and legal dictionaries."[25]

Surveying these sources, we conclude that the generic definition of robbery includes, as an element, that the stolen property be taken "from the person or in the presence of" the owner or victim. The statutes and decisions of the highest courts in at least twenty-seven states and the District of Columbia include the presence element in their definitions of robbery.[26] The presence element is also found in

---

[23] *United States v. Castillo*, 896 F.3d 141, 150 (2d Cir. 2018) (quoting *Taylor*, 495 U.S. at 593).

[24] *Taylor*, 495 U.S. at 598.

[25] *Castillo*, 896 F.3d at 150.

[26] *See, e.g.*, Alaska Stat. § 11.41.510(a) ("immediate presence and control of another"); Ariz. Rev. Stat. § 13-1902(A) ("from his person or immediate presence"); Cal. Penal Code § 211 ("personal property in the possession of another, from his person or immediate presence"); Colo. Rev. Stat. § 18-4-301(1) ("from the person or presence of another"); D.C. Code § 22-2801 ("from the person or immediate actual possession of another"); Fla. Stat. § 812.13(1) ("from the person or custody of another"); Ga. Code Ann. § 16-8-40(a) ("from the person or the immediate presence of another"); Idaho Code § 18-6501 ("from his person or immediate presence"); Ill. Comp. Stat. Ch. 720, § 5/18-1(a) ("from the person or presence of another"); Ind. Code § 35-42-5-1 ("from another person or from the presence of another person"); Kan. Stat. § 21-5420(a) ("from the person or presence of another"); La. Rev. Stat. § 14:65(A) ("from the person of another or that is in the immediate control of another"); *Ball v. State*, 699 A.2d 1170, 1183 (Md. 1997) ("from his person or in his

law treatises[27] and legal dictionaries.[28] And the United States Code includes a presence element in its definition of robbery.[29]

New York, however, deliberately revised its robbery statute to eliminate the presence element.[30] In 1961, the New York Legislature "created a Temporary State Commission whose purpose was to revise

---

presence"); Minn. Stat. § 609.24 ("from the person or in the presence of another"); Miss. Code § 97-3-73 ("in his presence or from his person"); Neb. Rev. Stat. § 28-324(1) ("from the person of another"); Nev. Rev. Stat. § 200.380(1) ("from the person of another, or in the person's presence"); N.M. Stat. § 30-16-2 ("from the person of another or from the immediate control of another"); Okla. Stat. tit. 21, § 791 ("from his person or immediate presence"); *State v. Rolon*, 45 A.3d 518, 525 (R.I. 2012) ("from the person of another, or in his presence" (internal quotation marks omitted)); *State v. Rosemond*, 589 S.E.2d 757, 758 (S.C. 2003) ("from the person of another or in his presence"); S.D. Cod. Laws § 22-30-1 ("from the other's person or immediate presence"); Tenn. Code § 39-13-401(a) ("from the person of another"); Vt. Stat., tit. 13, § 608(a) ("from his or her person or in his or her presence"); *Pierce v. Commonwealth*, 138 S.E.2d 28, 31 (Va. 1964) ("from his person or in his presence"); Wash. Rev. Code § 9A.56.190 ("from the person of another or in his or her presence"); W. Va. Code § 61-2-12(c)(1) ("from the person or presence of another"); Wis. Stat. § 943.32(1) ("from the person or presence of the owner").

[27] *See, e.g.*, 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 (3d ed. 2017) (Robbery includes the requirement "that the property be taken from the person or presence of the other.").

[28] *See, e.g.*, *Robbery*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The illegal taking of property from the person of another, or in the person's presence, by violence or intimidation; aggravated larceny.").

[29] 18 U.S.C. § 1951(b)(1) ("from the person or in the presence of another").

[30] *See People v. Smith*, 79 N.Y.2d 309, 313–14 & n.3 (1992) (summarizing statutory history).

and simplify the existing Penal Law."[31] The Commission proposed eliminating the "'from the person or in the presence of' limitation [because it] would exclude a variety of forcible thefts that were 'robberies in spirit.'"[32] The New York Legislature subsequently adopted the proposal, expanding the definition of robbery by not including a presence element. Under New York law, robbery can now be committed through the use or threat of force to compel another "to deliver up" property not in his presence, or simply "to engage in other conduct which aids in the commission of the larceny."[33]

Because generic robbery contains an element not found in New York's robbery statute, the New York statute "sweeps more broadly than the generic crime."[34] Accordingly, robbery under New York law does not qualify as a crime of violence under the "enumerated offenses" in application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. [35]

Pereira, of course, was convicted of attempted robbery in the second degree in violation of N.Y. Penal Law §§ 110.00 and 160.10, not simple robbery. But none of the aggravating factors set forth in N.Y.

---

[31] *Id.* at 313.

[32] *Id.* at 314.

[33] N.Y. Penal Law § 160.00(2).

[34] *Descamps*, 570 U.S. at 261.

[35] *Id.* at 257.

Penal Law § 160.10 creates a requirement of presence.[36] Nor does New York's definition of criminal attempt.[37]

We therefore hold that Pereira's prior conviction for attempted robbery in the second degree in violation of N.Y. Penal Law §§ 110.00 and 160.10 is not a "crime of violence" under the "enumerated offenses" in application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines.

### C. The "Force Clause" Analysis

We must next consider whether Pereira's prior conviction qualifies as a "crime of violence" under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. We conclude that it does.

To determine whether a particular prior conviction is a "crime of violence" under the "force clause," we again apply the categorical approach or its modified counterpart.[38] But the analysis differs from that applied to an "enumerated offense." Instead of asking whether the statutory elements of the predicate offense "are the same as, or

---

[36] *See* N.Y. Penal Law § 160.10.

[37] *See id.* § 110.00 ("A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.").

[38] *See Stuckey*, 878 F.3d at 66–67. As discussed above, the statute at issue criminalizes multiple acts in the alternative. We therefore apply the modified categorical approach.

narrower than, those of the generic offense,"[39] we consider whether the predicate offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."[40] In so doing, we focus on "the minimum criminal conduct necessary for conviction under a particular statute."[41]

Not all criminal offenses involving actual, attempted, or threatened physical contact qualify as "crimes of violence" under the "force clause." In *Johnson v. United States*, the Supreme Court clarified that the phrase "physical force" in the "force clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(b)(2)(B), "means *violent* force—that is, force capable of causing physical pain or injury to another person."[42] The battery statute at issue there had, as an element, that the defendant "actually and intentionally touched the victim."[43] The Supreme Court held that this statute did not qualify as a "crime of violence" because it could be committed "by *any* intentional physical contact, no matter how slight."[44]

---

[39] *Descamps*, 570 U.S. at 257.

[40] U.S.S.G. § 2L1.2, cmt. 1(B)(iii) (2014); *see also Stuckey*, 878 F.3d at 70.

[41] *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (internal quotation marks omitted).

[42] 559 U.S. 133, 140 (2010) (emphasis in original).

[43] *Id.* at 137 (internal quotation marks and alterations omitted).

[44] *Id.* at 138 (emphasis in original) (internal quotation marks omitted).

Pereira argues that, after *Johnson*, we must overturn our earlier holding in *United States v. Spencer* that robbery under New York law is a "crime of violence" under the "force clause."[45] We disagree.

Unlike the battery statute in *Johnson*, New York's robbery statute cannot be violated "by *any* intentional physical contact, no matter how slight."[46] New York defines robbery as "forcible stealing," which requires "us[ing] or threaten[ing] the immediate use of physical force upon another person."[47] That level of physical force must be enough "to prevent resistance to the taking or to compel the owner to deliver up the property."[48] By its plain language, then, New York's robbery statute includes as an element the use of violent force.

The New York Court of Appeals recently supplied support for this interpretation of New York robbery in *People v. Jurgins*.[49] Jurgins challenged his second felony offender adjudication on the grounds

---

[45] *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992). In *United States v. Jones*, this Court initially reversed *Spencer* on the basis of perceived supervening Supreme Court guidance. *United States v. Jones*, 830 F.3d 142 (2d Cir.), *vacated*, 838 F.3d 296 (2d Cir. 2016) ("*Jones I*"). But *Jones I* was subsequently vacated and our ruling in *Spencer* was reinstated. *See Massey v. United States*, 895 F.3d 248, 251 n.6 (2d Cir. 2018) (describing sequence of events).

[46] *Johnson*, 559 U.S. at 138 (emphasis in original) (internal quotation marks omitted).

[47] N.Y. Penal Law § 160.00.

[48] *People v. Jurgins*, 26 N.Y.3d 607, 614 (2015).

[49] *Id.*

19

that his prior Washington, DC conviction for attempted robbery was "not equivalent to any New York felony."[50] He argued that robbery under Washington, DC law—unlike robbery under New York law—could be committed by such little force as "sudden or stealthy seizure" or a "snatching."[51] The Court of Appeals agreed with the parties that "taking 'by sudden or stealthy seizure or snatching,' would not be considered a robbery or other felony in New York, inasmuch as it is akin to pickpocketing, or the crime of jostling, which is a misdemeanor in this state."[52]

Pereira identifies several New York Appellate Division decisions that could be read to suggest that robbery does not necessarily involve the use of violent force. For example, Pereira cites a case in which defendants were convicted of robbery by forming "a human wall that blocked the victim's path,"[53] and another in which the defendant physically "block[ed] the victim's passage."[54]

Pereira minimizes the conduct presented in these cases. The "human wall" was no mere obstacle to the victim's pursuit of the robber; it constituted a threat that pursuit would lead to a violent confrontation. So too did blocking the victim's passage in the latter

---

[50] *Id.* at 610.

[51] *Id.* at 614–15.

[52] *Id.* at 614.

[53] *People v. Bennett*, 631 N.Y.S.2d 834, 834 (App. Div. 1995).

[54] *People v. Patton*, 585 N.Y.S.2d 431, 431 (App. Div. 1992).

case. Only by backing down in the face of these threats did the victims avoid physical force.

Finally, Pereira argues his prior offense of *attempted* robbery in the second degree does not qualify as a "crime of violence" because "attempted robbery can be committed without the defendant using, attempting to use, or threatening to use physical force."[55] This argument misrepresents criminal attempt under New York law. Regarding attempt, the state's highest court requires that the action taken by an accused be "so near to its accomplishment that in all reasonable probability the crime itself would have been committed, but for timely interference."[56]

In short, we conclude that "robbery" as it is defined in N.Y. Penal Law § 160.00, qualifies as a "crime of violence" under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. Because that definition of robbery—forcible stealing—is common to all degrees of robbery under New York law, we hold that robbery in any degree is a crime of violence under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the 2014 Guidelines. We also hold that attempted robbery under New York law is a "crime of violence" under the "force clause."

---

[55] Appellant Br. at 16.

[56] *People v. Mahboubian*, 74 N.Y.2d 174, 196 (1989) (internal quotation marks omitted); *see also People v. Bracey*, 41 N.Y.2d 296, 300 (1977) ("[I]t must be proven that the defendant acted to carry out his intent.").

## III. CONCLUSION

To summarize, we hold as follows:

(1) Attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110.00 and 160.10, is not a "crime of violence" under the "enumerated offenses" of application note 1(B)(iii) to Section 2L1.2 of the November 1, 2014 edition of the Sentencing Guidelines; and

(2) Robbery and attempted robbery in any degree under New York law are "crimes of violence" under the "force clause" of application note 1(B)(iii) to Section 2L1.2 of the November 1, 2014 edition of the Sentencing Guidelines.

For the foregoing reasons, we **AFFIRM** the District Court's judgment.